FILED
United States Court of Appeals
Tenth Circuit

April 15, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KEENAN, HOPKINS, SUDER, AND
STOWELL CONTRACTORS, INC., d/b/a
KHS&S Contractors,

    Petitioner,

v.

DEPARTMENT OF LABOR,

    Respondent.

No. 20-9537
(OSHC No. 18-1306)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **EID**, Circuit Judges.
_____

Keenan, Hopkins, Suder, and Stowell Contractors, Inc. (KHS&S) petitions for

review of a final decision by the Occupational Safety and Health Review

Commission (Commission) finding that KHS&S had committed a serious violation of

an applicable safety and health standard.  Exercising jurisdiction pursuant to

---

    * After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

29 U.S.C. § 660(a), we deny the petition for review and affirm the Commission's decision.

## I.    Procedural Background

While investigating an unrelated accident at a job site in Littleton, Colorado, an Occupational Safety and Health Administration (OSHA) investigator learned that KHS&S employees were climbing on, standing on, and working from the guardrails of an aerial lift basket to perform their work.  Upon the investigator's recommendation, the Secretary issued KHS&S a citation for a serious violation of 29 C.F.R. § 1926.453(b)(2)(iv), which requires that "[e]mployees shall always stand firmly on the floor of the basket [of an aerial lift], and shall not sit or climb on the edge of the basket or use planks, ladders, or other devices for a work position."  The citation proposed a penalty of $5,543.

KHS&S contested the citation with the Secretary of Labor, triggering review by the Commission.  *See* 29 C.F.R. § 659(c).  An administrative law judge (ALJ) presided over a one-day trial, after which both parties submitted post-trial briefs. The ALJ issued a written decision on January 17, 2020, affirming the citation and assessing a penalty of $5,543.  When the Commission declined discretionary review, the ALJ's decision became a final order of the Commission on February 20, 2020. *See F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1220 (10th Cir. 2018).

## II.    Discussion

In its petition for review, KHS&S contends that the ALJ erred: (1) by not allowing KHS&S sufficient time to prepare its defense after disclosure of witness

2

statements; (2) in finding that KHS&S knew or should have known that its employees were working from the railings of the aerial lift basket; and (3) in finding there was a serious violation of § 1926.453(b)(2)(iv).

### A. Time to Review Witness Statements

#### 1. Relevant Background

It was undisputed that two KHS&S employees, Fernando Ruiz Moya and Martin Rojas, had stood on the guardrails of an aerial lift basket while installing drywall on the exterior upper levels of a building that was under construction. During the investigation, Ruiz Moya and Rojas each provided a statement. The Secretary withheld their statements during discovery pursuant to the government informer's privilege. The Secretary then listed Ruiz Moya and Rojas as fact witnesses in a pretrial statement, which was served on KHS&S a week before the trial.

At the beginning of the trial, KHS&S inquired whether there were witness statements from Ruiz Moya and Rojas. Counsel asked to view any statements and sought a "short recess in order to review them and prepare before [cross examination]." Trial Tr. at 21. The ALJ construed counsel's request as seeking production of prior statements at that time. Following the Commission's caselaw, however, the ALJ ruled that the Secretary would be required to produce an informer witness's prior statement only after the witness's direct examination, at which point

3

the ALJ would recess to allow KHS&S time to review the statement before proceeding with cross examination.

After Ruiz Moya's direct examination, the Secretary produced his statement. Following a twenty-minute recess, the trial resumed with the ALJ stating: "I know you had a pretty short amount of time to review what you said was a 65-page interview statement with the witness. Are you ready to proceed with your cross-examination?" *Id.* at 63. KHS&S's counsel responded:

> I would, your Honor, like to make an objection, just for the record, though, about the witness statement.
>
> . . .
>
> . . . First, we would like to object that the Secretary did not produce redacted copies of the statements during discovery.
>
> Secondly, we believe under . . . a Tenth Circuit case, that these statements should have been produced at the time the Secretary identified the witnesses on the pretrial statement.
>
> Alternatively, we believe they should have been produced at the start of the hearing today, once the Secretary knew that she was, in fact, calling the witness since it was, in fact . . . I think it's about 75 pages of a transcript.
>
> So we believe that the Respondent has been prejudiced by the fact that they have been produced after the witness has testified with only about 20 minutes to review the transcript.

*Id.* at 63-64. Counsel did not request additional time to review Ruiz Moya's witness statement. The ALJ overruled KHS&S's objections and counsel proceeded with the cross examination.

Rojas was the next witness called after Ruiz Moya. Before he testified, KHS&S renewed its request for his prior statement. Over the Secretary's objection,

4

the ALJ ordered the Secretary to produce Rojas's statement before his direct examination because it was clear he was going to testify. Rojas's statement was approximately the same length as Ruiz Moya's statement. The ALJ recessed for a one-hour lunch break during Rojas's direct testimony. When his direct testimony concluded, KHS&S's counsel proceeded with cross examination without making any objection or asking for additional time to review Rojas's prior statement.

In its post-hearing brief, KHS&S argued that the ALJ had misapplied the government informer's privilege and had provided insufficient time to review the informer witnesses' statements such that KHS&S could not adequately prepare for cross examination.

### 2. The Government Informer's Privilege

"The government is privileged to withhold from disclosure the identities of persons furnishing information of law violations to law enforcement officers. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Usery v. Loc. Union 720, Laborers' Int'l Union of N. Am., AFL-CIO*, 547 F.2d 525, 527 (10th Cir. 1977) (citation and internal quotation marks omitted). "The principle applies in both civil and criminal actions." *Id.* This court has applied the government informer's privilege, for example, in actions under the Fair Labor Standards Act. *See id.* The Commission has also long held that the privilege applies in proceedings before it. *See Massman-Johnson (Luling)*, 1980 CCH OHSD ¶ 24436, 1980 WL 10593, at *3 (No. 76-1484, 1980). "The informer's privilege belongs to the government . . . ." *Id.* at *10. And "the mere fact

that [an employee] supplied information relevant to the investigation of alleged OSHA violations makes the privilege applicable." *Id.* at *4.

The Commission has stated that "[t]he essence of the informer's privilege . . . is the protection of the informer's identity, and the confidential information in a statement is that which tends to indicate that the person giving it has cooperated with the government against the employer." *Id.* Thus, witness statements are protected from disclosure because "the identity of an informer might be revealed from the disclosure of even a basically factual statement relevant to an investigation, for example, if the tone and manner of the statement were accusatory or unfriendly to the respondent." *Id.* The "concern [is] over possible witness harassment due to premature disclosure of witness statements," such as "pressure by the employer . . . involved on the employees or others to change their testimony or discourage them from testifying." *Id.* at *7.

In *Massman-Johnson*, *see id.*, the Commission discussed a case in which the Eighth Circuit held that the appropriate time for disclosure of informer statements is left to the trial court's "sensitive discretion," *Brennan v. Eng'red Prods., Inc.*, 506 F.2d 299, 304 (8th Cir. 1974). *Brennan* had set forth several options for the timing of disclosure, including the approach applied in federal criminal cases under the Jencks Act, pursuant to which a defendant is allowed to examine a government witness's prior statement only after the witness has completed testifying on direct examination. *See* 506 F.2d at 304-05; 18 U.S.C. § 3500(b). Ultimately, the Commission decided to adopt the Jencks Act approach in proceedings before it,

6

*see* 1980 WL 10593, at *9, unless, however, the respondent has made a "particularized showing of need for any of the statements themselves before the hearing sufficient to outweigh the strong public interest in protecting the confidentiality of government sources," *id.* at *11.

Also consistent with the Jencks Act, *see* 18 U.S.C. § 3500(c), the Commission set forth a procedure to allow for review of an informer witness's statement that is disclosed after direct examination:

> The Respondent shall be entitled to a recess for such reasonable time as is necessary to evaluate a statement and prepare to use it in the hearing. In the event that a statement disclosed at the hearing contains material that the respondent could not have discovered previously and that bears on the issues in the case, the respondent shall be entitled upon request to a recess or continuance for such time as is reasonably necessary to meet or take advantage of the new evidence.

*Massman-Johnson*, 1980 WL 10593, at *9. It further stated that "any unfair surprise may be cured by a recess or continuance." *Id.* at *10.

### 3. Standard of Review

We apply the same standard of review to the ALJ's decision as we would apply to an order actually issued by the Commission. *See F & H Coatings*, 900 F.3d at 1221. KHS&S argues the time allotted by the ALJ for its review of the prior statements by Ruiz Moya and Rojas after they were produced by the Secretary was unreasonable. But it does not clearly articulate what standard of review this court should apply. It contends the ALJ's decisions were "not in accordance with the law," Pet. Opening Br. at 15, but it fails to explain how a reasonableness determination raises a legal question. KHS&S also argues that the ALJ abused his discretion.

7

*See id.* at 2, 28.  For several reasons, we conclude that the determination of what amounts to a reasonable amount of time in this context is a matter within the discretion of the ALJ.

First, the Commission modeled its rule for the timing of disclosure of informer witness statements on the Jencks Act.  *See Massman-Johnson*, 1980 WL 10593, at *9.  Under the Jencks Act, the amount of time permitted for a criminal defendant to review a government witness's statement is subject to the court's discretion.  *See* § 3500(c); *see also Ogden v. United States*, 303 F.2d 724, 738 n.51 (9th Cir. 1962) ("The recess which the Court in the exercise of its discretion (18 U.S.C.A. § 3500(c)) granted to defendant to examine the statement was short, but in all the circumstances we cannot say that it was so unreasonably short as to constitute an abuse of discretion.").  Moreover, outside of the criminal context, this court has applied an abuse-of-discretion standard in reviewing district courts' application of the government informer's privilege.  *See Usery*, 547 F.2d at 528; *Brock v. Gingerbread House, Inc.*, 907 F.2d 115, 117 (10th Cir. 1989).  Finally, we also review issues related to the grant or denial of a continuance for an abuse of discretion.  *See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1229 n.4 (10th Cir. 1999) (reviewing a district court's denial of a continuance); *Robinson v. United States*, 718 F.2d 336, 338 n.1 (10th Cir. 1983) (reviewing an ALJ's denial of a continuance).

We will therefore review for an abuse of discretion the ALJ's determinations in this case regarding the time allotted KHS&S to review informer witness

8

statements. And we "will find error only if the decision was arbitrary, capricious, whimsical or manifestly unreasonable, or we are convinced that the tribunal made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *F & H Coatings*, 900 F.3d at 1223 (brackets and internal quotation marks omitted).

### 4. KHS&S's Contentions

Under *Massman-Johnson*, KHS&S was "entitled to a recess for such reasonable time as is necessary to evaluate a statement and prepare to use it in the hearing." 1980 WL 10593, at *9. KHS&S first contends that the time permitted by the ALJ—twenty minutes to review Ruiz Moya's seventy-five page statement and one hour to review Rojas's sixty-five page statement—was insufficient under *Massman-Johnson*. But the Commission did not decide in that case how much time is reasonable under particular circumstances. Here, KHS&S tells us nothing about the circumstances beyond the length of the witnesses' statements and the duration of the recesses. It does not point to where the statements are contained in the administrative record, nor have we found them. And despite KHS&S's assertion otherwise, it is not obvious based solely upon a stated number of pages that the time allotted by the ALJ for review was manifestly unreasonable.

For example, one court held it was an abuse of discretion to deny a defendant's request for additional time to review Jencks Act material that had been produced one day before the trial began, which consisted of one thousand pages of testimony (an eight-inch stack of paper) and a forty-five minute video tape. *See United States v.*

9

*Holmes*, 722 F.2d 37, 40-41 (4th Cir. 1983). But another court held there was no abuse of discretion in allowing only nine minutes to review a stack of papers one-quarter the size of that produced in *Holmes*. *See United States v. Stanfield*, 360 F.3d 1346, 1356-58 (D.C. Cir. 2004). The volume of paper in this case appears to be comparable to that produced in *Stanfield*, in which the court concluded that "[n]o one would accuse the district court here of being overly generous in affording counsel time to review the documents produced after [the government witness's] testimony; indeed, the court flirted with the outer limits of its discretion, but we cannot conclude that it abused that discretion." *Id.* at 1358. Nor does KHS&S cite any case in which a comparable recess to review a similar volume of material was held to constitute an abuse of discretion. We conclude that KHS&S has not demonstrated an abuse of discretion by the ALJ based solely upon the length of the witnesses' statements and the duration of the recesses after they were produced.

KHS&S also appears to contend that the ALJ abused his discretion by not granting an additional recess or a continuance. *See* Pet. Opening Br. at 19 ("The ALJ decided that a short break and then a lunch break would suffice instead of granting a recess or a continuance of the hearing."). But KHS&S never sought an additional recess or a continuance of the trial. When asked by the ALJ if she was ready to proceed with Ruiz Moya's cross examination, KHS&S's counsel made objections "just for the record" regarding the Secretary's failure to produce the witnesses' statements either before trial or at the beginning of trial. Trial Tr. at 63. She concluded by asserting (without elaboration) that KHS&S had been prejudiced by the

10

production of Ruiz Moya's statement after he testified "with only about 20 minutes to review the transcript." *Id.* at 64. When the ALJ overruled these objections, counsel proceeded to cross examine Ruiz Moya. Then, after the lunch break and the conclusion of Rojas's direct examination, counsel proceeded with cross examination without offering any objection, much less a request for additional time to review Rojas's prior statement. *See id.* at 109.

We will not fault the ALJ for failing to grant a further recess or a continuance when no such request was made. In particular, under *Massman-Johnson*, if a witness's "statement disclosed at the hearing contains material that the respondent could not have discovered previously . . . the respondent shall be entitled *upon request* to a recess or continuance for such time as is reasonably necessary to meet or take advantage of the new evidence." 1980 WL 10593, at *9 (emphasis added). Although this is precisely the type of prejudice that KHS&S contends it suffered, it made no such request during the trial.

KHS&S asserts that it first learned at trial that the Secretary alleged a particular supervisor, Ricardo Cereceres, had authorized employees to work from the guard rails of the aerial basket or knew that they were doing so. KHS&S claims that "[w]ithout time to prepare with Mr. Rojas' prior statement, [it] had no way to test the

11

veracity of his multiple statements made at trial." Pet. Opening Br. at 11.[1]  It

contends this "amounted to trial by ambush." *Id.* at 19.

There are several problems with these contentions.  First, KHS&S argues it

was prejudiced because it was unaware of unspecified "material" in the witnesses'

prior statements due to the Secretary's failure to disclose them before the trial.  *Id.* at

18.  But it fails to demonstrate that the ALJ abused his discretion by ordering their

disclosure after (or just before) the witnesses' direct examinations.[2]  KHS&S also

does not show how its alleged prejudice relates to new information in the witnesses'

prior statements, which, as we have noted, are absent from the administrative record.

But even assuming that either or both of the statements alleged knowledge or

authorization by Cereceres, KHS&S ignores the Commission's holding that, when

---

[1] It appears that KHS&S focuses on Rojas's prior statement and testimony because Ruiz Moya did not testify that Cereceres authorized him to stand on the railing of the aerial basket.

[2] KHS&S challenges the timing of disclosure of the informer witness statements in a perfunctory manner in a footnote of its opening brief.  *See* Pet. Opening Br. at 18 n.2.  It argues the Secretary was obliged to produce redacted statements before the trial if their contents did not reveal the informers' identities. But it fails to demonstrate this was the case.  And the Commission has noted that "a rule requiring pretrial disclosure of witness statements generally, even with deletions, may result in unnecessary disclosure of informers' identities" and also "might lead to extensive in camera proceedings and place an unwarranted administrative burden upon judges." *Massman-Johnson*, 1980 WL 10593, at *10.  KHS&S also argues the Secretary could have produced the prior statements when Ruiz Moya and Rojas were listed as witnesses in the Secretary's pretrial statement.  But the Commission has held "that submission of a witness list . . . does not constitute a waiver of the confidentiality of the identities of informers or their statements." *Id.* at *5. Ultimately, KHS&S fails to show that the ALJ abused his discretion by timing the Secretary's disclosure of the informer witnesses' statements consistent with the Commission's holding in *Massman-Johnson*.

"the problem of surprise at trial due to the contents of a witness statement" arises, "any unfair surprise may be cured by a recess or continuance," *Massman-Johnson* 1980 WL 10593, at \*10. And despite having an hour to review Rojas's statement and hearing his direct testimony regarding Cereceres's authorization, KHS&S did not ask the ALJ for additional time either to prepare for the cross examination or to offer other rebuttal evidence. KHS&S therefore fails to demonstrate it was prejudiced by having insufficient time to prepare its defense after the Secretary produced the witnesses' statements. *See United States v. Arboleda*, 929 F.2d 858, 864 (1st Cir. 1991) (treating "with skepticism . . . claims of prejudice when accompanied by a failure to attempt at trial to mitigate the perceived harm").

We reject KHS&S's first claim of error because it has not identified an abuse of discretion by the ALJ in the timing of the Secretary's disclosure of informer witness statements or in the amount of time allotted for review of such statements. It also failed to make any attempt to cure or mitigate any prejudice. We ultimately cannot say that the ALJ's decisions were arbitrary, capricious, whimsical or manifestly unreasonable, nor are we convinced that the ALJ made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

## B. ALJ's Finding That KHS&S Knew or Should Have Known of the Violation

Section 1926.453(b)(2)(iv) requires that "[e]mployees shall always stand firmly on the floor of the basket [of an aerial lift], and shall not sit or climb on the edge of the basket or use planks, ladders, or other devices for a work position." To

13

establish a violation of an OSHA safety and health standard, the Secretary must demonstrate the following elements by a preponderance of the evidence: "(1) the applicability of the standard, (2) the employer's noncompliance with the terms of the standard, (3) employee access to the violative condition, and (4) the employer's actual or constructive knowledge of the violation." *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1256 (10th Cir. 2018). KHS&S challenges the ALJ's finding on the fourth element: that it knew, or with reasonable diligence should have known, that its employees were working from the aerial basket railings.

### 1. Standard of Review

We will uphold an ALJ's factual finding if it is supported by substantial evidence. *See F & H Coatings*, 900 F.3d at 1221; 29 U.S.C. § 660(a).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*F & H Coatings*, 900 F.3d at 1221 (internal quotation marks omitted). "[W]e do not reweigh the evidence, second-guess the factual inferences drawn therefrom, or substitute our judgment on the credibility of witnesses." *Id.* (internal quotation marks omitted).

### 2. Relevant Background

Ruiz Moya and Rojas were using an aerial lift to install sheets of drywall—which measured four feet by eight feet and weighed forty pounds—on the exterior upper levels of a building approximately sixty to eighty feet above the ground.

14

Because of certain aspects of the building under construction, the distance from the aerial lift basket to the point of installation was sometimes three to four feet. Cereceres and another supervisor, Morgan Payne, directed Ruiz Moya and Rojas to install self-retracting lanyards, also called "yo-yos," on the building's steel I-beams above the basket so that they could tie-off when stepping out of the basket. The ALJ found that Ruiz Moya and Rojas consistently testified that, when installing the drywall sheets, they sometimes stood with one or both feet on the aerial basket railing. They also sometimes used the basket railing to climb out of the basket when it was not possible to open the gate due to the position of the basket relative to the building. The ALJ also pointed to testimony that Payne and Cereceres authorized the employees to stand on the basket railing to get their job done, as long as they tied-off to a yo-yo.

The ALJ found that KHS&S either knew, or with the exercise of reasonable diligence should have known, that Ruiz Moya and Rojas were repeatedly standing on, climbing on, and working from the aerial lift basket railings. The ALJ found the evidence showed that these employees were doing so multiple times per hour throughout the day. Finding that the aerial lift was visible from the main entrance to the job site as well as from KHS&S's job trailer, the ALJ concluded that "the violative condition was open, obvious, and in plain view." ALJ's Dec. & Ord. at 9. The ALJ also pointed to the following evidence regarding the supervisors' knowledge:

15

> Supervisors Payne and Cereceres acknowledged providing [the employees] with a yo-yo strap to enable them to climb out of the basket as needed. Payne, and to a lesser extent Cereceres, were seen walking around the job underneath the two employees throughout the day. Payne even repaired their stuck aerial lift twice. Cereceres stopped and commented on the location of their yo-yo on one occasion.

*Id.* The ALJ found that, "[w]ith the exercise of reasonable diligence, both Payne and Cereceres should have known what Ruiz [Moya] and Rojas were doing to perform their assigned task." *Id.*

### 3. KHS&S's Contentions

KHS&S argues the ALJ's knowledge finding is not supported by substantial evidence. But its contentions ask this court to ignore substantial evidence in the record, reweigh the evidence, draw different inferences than the ALJ, or reassess witness credibility.

KHS&S argues the ALJ "fail[ed] to rectify the inconsistences in Mr. Rojas' testimony at trial" regarding who authorized him to work from the aerial lift basket railings. Pet. Opening Br. at 21. But the ALJ pointed to Rojas's testimony that he received authorization from both Cereceres and Payne. And KHS&S does not explain why a reasonable jury could not rely on that evidence. *See F & H Coatings*, 900 F.3d at 1221.

It also contends there was inconsistent or conflicting testimony regarding how often the employees were working from the railings, as well as the distance and visibility from the job trailer to the aerial lift. KHS&S argues the "facts show that the condition did not exist long enough to establish [it] failed to use reasonable

16

diligence to gain knowledge." *Id.* at 25. Again, however, this contention fails to demonstrate that the evidence actually relied on by the ALJ was insubstantial.

KHS&S argues the evidence that Payne and Cereceres were attentive to the employees working in the aerial lift basket shows their reasonable diligence in enforcing safety standards rather than their knowledge of violations. It also contends the evidence that KHS&S implemented work rules, trained employees, inspected the job site, and supervised and disciplined employees shows it was unlikely that KHS&S management would permit employees to stand on the railings to do their work. But these assertions merely ask us to draw different inferences from the evidence than the ALJ.

Finally, KHS&S argues the ALJ should have relied on the testimony of Christian Mancera, its Regional Safety Engineer, regarding its lack of knowledge. But it ignores that the ALJ "did not find Mr. Mancera to be very credible." ALJ Dec. & Ord. at 11 n.3. And we defer to the ALJ's credibility determinations.[3]

KHS&S fails to demonstrate that the ALJ's finding as to its knowledge of the violation was not supported by substantial evidence.

---

[3] In addition, KHS&S appears to concede that the testimony of Ruiz Moya and Rojas constitutes substantial evidence supporting the ALJ's knowledge finding. *See* Pet. Opening Br. at 19; Reply Br. at 8-9.

17

## C. ALJ's Finding That KHS&S's Violation Was Serious

Violations of OSHA safety and health standards are classified based on their seriousness. *See Jake's Fireworks*, 893 F.3d at 1256 (noting violations can range from "de minimis" to "willful").

> [A] serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment.

29 U.S.C. § 666(k). The Secretary need not prove a substantial probability that an accident would occur; rather he need only show that if an accident were to occur, death or serious physical harm could result. *See Kent Nowlin Constr. Co. v. Occupational Safety & Health Rev. Comm'n*, 648 F.2d 1278, 1282 (10th Cir. 1981). KHS&S challenges the ALJ's finding that its violation of § 1926.453(b)(2)(iv) was serious. We will uphold the ALJ's finding if it was supported by substantial evidence. *See F & H Coatings*, 900 F.3d at 1221.

The ALJ found as follows:

> If Ruiz [Moya] or Rojas had slipped while working from the aerial lift guardrails, they could have been seriously injured. The self-retracting lanyard, or yo-yo, they were connected to would quickly slow the rate of the fall or swing, but would not prevent it. Complainant and Respondent disagreed on the distance that the employees would fall or swing if they lost their footing while standing on the guardrails. Complainant argued they could have fallen as much as 14 feet before the fall protection equipment stopped them. Respondent argued it would have only been 2 feet of free fall. The Court finds that a slip, fall, or swing of even 2-3 feet by either employee, could have resulted in them striking the steel I-beam, the outside of the basket, or falling in between the basket and the steel I-beams. This could have resulted in serious injuries, including head injuries or broken limbs. This is especially true considering the shaky, unsteadiness of the

18

aerial lift basket as employees moved around. Citation 1, Item 1 was properly characterized as a serious violation of the Act.

ALJ's Dec. & Ord. at 10 (citations omitted).

KHS&S argues that no evidence supports the ALJ's finding. It contends that the yo-yos the employees used would permit no more than a one-to-two-foot fall, which KHS&S argued "removes any fall hazard." Pet. Opening Br. at 27. KHS&S maintains there was no evidence supporting a finding that an employee could sustain the type of injuries assumed by the ALJ based on such a fall.

We disagree. There was evidence that the employees were frequently standing on the railing of the aerial lift basket, which was only two inches wide, while installing sheets of drywall measuring four feet by eight feet that weighed forty pounds. The basket was unsteady and tipped toward one side when an employee stood on the railing. The basket was adjacent to steel I-beams on the building, and the employees sometimes stood on both the railing and an I-beam to install drywall. The ALJ found that a slip, fall, or swing of even two feet could cause an employee to strike a steel I-beam or the outside of the basket, which could result in a head injury or a broken limb. The ALJ's finding of a serious violation is supported by substantial evidence.

## III.   Conclusion

We deny the petition for review and affirm the Commissioner's decision.

Entered for the Court

Bobby R. Baldock
Circuit Judge

19